**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| Joe Fairley, | No. 1:06-cv-00786-LG-RHW |
| Plaintiff, | |
| | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** |
| v. | |
| | (Civil Rights-Employment) |
| Northrop Grumman Ship Systems, Inc., | Jury Trial Demanded |
| Defendant. | |

## PRELIMINARY STATEMENT

1.      This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2.      This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

1

## **PARTIES**

3.      Plaintiff JOE FAIRLEY is a Black employee of NGSS who has been employed by NGSS for over 35 years.

4.      NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5.      NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended.  NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6.      All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7.      Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8.      On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9.      Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10.     An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-CV-111(G)(R).

11.     A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12.     A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a)   Dismissal of the class action allegations seeking compensatory and punitive damages;

   b)   Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c)   Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d)   Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e)   Dismissal of defendant LITTON INDUSTRIES; and

   f)   Dismissal of defendant NORTHROP GRUMMAN.

13.     A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14.     On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15.     On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

3

of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

16.     At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff JOE FAIRLEY's severed action was assigned the case number of 1:06-cv-00786-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17.     The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

a)  By failing to treat Blacks on an equal basis with Whites.

b)  By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

c)  By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

d)  By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e)  By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism,

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

4

word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have inured to the determent of Black employees historically.

f)  By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g)  By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h)  By demoting Black employees at a disproportionate rate as compared to White employees.

i)  By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j)  By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k)  By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

l)  By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18.    This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19.    NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

5

## SPECIFIC CLAIMS FOR RELIEF

## TITLE VII AND § 1981

20.     Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

21.     Plaintiff has worked for more than 35 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat."  Plaintiff is informed and believes and based thereon alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist.  Plaintiff has made it known that he has been interested in being selected for the position of "leaderman "or "half-hat," however, plaintiff has held the position for only one six-month period in 1976, in spite of his more than 35 years of experience at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat."  The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

22.     Other than his six month promotion to work leaderman in 1976, Plaintiff has never been promoted in spite of plaintiff's more than 35 years at NGSS.  Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, Plaintiff has not applied for promotive positions for which he was qualified, and plaintiff has never been selected for promotion to any such position.  His early experience with discriminatory denial of promotions began in the 1970's, when plaintiff applied for weld checker, a position for which plaintiff was qualified, but for which he was not selected because of his race. By the mid-1980's, plaintiff applied for welding instructor, a position for which plaintiff was qualified, but for which he again was not selected because of his race.  Plaintiff was deterred by his experiences and knowledge of Defendants' promotional practices from applying for a number of subsequent positions for which he was qualified.  Plaintiff has applied for promotive positions on numerous occasions, and learned that he did not get the job by observing

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

6

that others were promoted despite the fact that he was qualified for the positions for which he has applied. The means used to determine that plaintiff would not be selected for positions for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23.     Plaintiff has been laid off at times during which similarly situated White co-workers with fewer years of seniority were not laid off.  Plaintiff has been laid off under such circumstances in at least the following instances:

   a)  On or about December 1979, plaintiff was laid off from the position of structural welder for four months.  In March 1980, Plaintiff was offered a rail car job, where he worked for about 2-3 weeks.  He then complained about not being assigned to go back to the structural welder position and as a result, he was reassigned to the structural welder position.   At the time plaintiff was laid off, plaintiff's seniority in the company was 10 years, and in the department was 10 years.   Plaintiff is informed and believes and based thereon alleges that White co-workers with fewer years of seniority were not laid off at that time.

   b)  On or about November 1983, plaintiff was laid off from the position of welder specialist for six months.  At that time plaintiff was laid off, plaintiff's seniority in the company was 14 years, and in the department was 14 years.  Plaintiff is informed and believes and based thereon alleges that White co-workers with fewer years of seniority were not off at that time.

   c)  On or about March 1988, plaintiff was laid off from the position of welder specialist for approximately one month.  At the time plaintiff was laid off, plaintiff's seniority in the company was 10 years, and his seniority in the department was 10 years.  Plaintiff is informed and believes and based thereon alleges that White co-workers with fewer years of seniority were not laid off at that time.  Plaintiff returned to work in the position of welder specialist.

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

7

24.     On or about 2002-2003, plaintiff received less compensation than similarly situated White employees, who were made inspectors.  Plaintiff is informed and believes and based thereon alleges that he received less per hour for his job in order to fund the newly created inspector positions held by White employees.

25.     Plaintiff has made his supervisor(s) aware that he desired to be chosen to go on work trips; however, he has never been selected to participate in any of the work trips in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  In the 1970s, 1980s and early 1990s, Plaintiff informed Supervisors Clark and  D. George of Plaintiff's desire to participate in work trips to San Diego, Hawaii, Chicago and the State of Washington, but was not selected to go.  Furthermore, the selection process for participating work trips has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

26.     Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  Plaintiff has been forced to work in either the hot sun or in the cold while similarly situated White employees were allowed to work in more comfortable conditions.  In contrast to White employees, Plaintiff has been assigned to jobs where he was forced to work in the inner bottom, which is cramped, dirty, and wet; the jack-up box, which is also cramped and wet; in an oil right, which requires working in grease; in pontoons, which requires standing in oil; and in the hull, which is cramped, hot, extremely dirty, greasy, dangerous and inadequately ventilated.

27.     Plaintiff has been subjected to the practice of forcing Black employees disproportionately as compared to White employees to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions.   Plaintiff sustained a work-related back injury and was placed on permanent disability.  When plaintiff returned from a leave of absence to which he was subject to certain

Plaintiff Joe Fairley's Complaint for                                                                                          8
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

medical restrictions, on or about October 1989, plaintiff was transferred from the aluminum fab shop to the CSA shop by Foremen Winston Pierce and Bennie Elersol, in violation of these medical restrictions.  As a result, plaintiff re-injured himself and was placed on another leave of absence, on or about May 1990.  Superintendent C.D. Dickson was aware of plaintiff's restrictions, yet reassigned plaintiff to jobs that violated these medical restrictions.

28.     Plaintiff has been subjected to disparate treatment with regard to shift assignment. After Hurricane Katrina, a white male was given Plaintiff's day shift job and when Plaintiff returned to work, Plaintiff was placed on the night shift.  When he asked Bob McDonald, Superintendent in the Tool Rooms, if he could have his day shift job back, McDonald denied his request.

29.     Plaintiff has been subjected to disparate treatment with regard to the imposition of discipline for actual or alleged transgressions for which plaintiff is informed and believes similarly situated White employees were not disciplined. Such occurrences include the following.

a) On or about February 6, 1978, plaintiff was terminated for insubordination after touching an acting supervisor who called him a "nigger."  Plaintiff has observed a White supervisor slap another White employee, and Plaintiff is informed and believes and based thereon alleges that White supervisors and White employees were not subjected to termination for engaging in physical altercations with White employees.

b) Plaintiff has been excessively disciplined for minor infractions for which other similarly situated White employees are not typically disciplined, including the issuance of warning slips for "loafing," and "walking and talking," and other racially biased alleged violations.  In many instances, defendant failed to provide plaintiff with copies of these warning slips. Thus, many times Plaintiff did not know such documents existed.  Plaintiff is informed and believes and based thereon alleges that similarly situated White employees have not been subjected to this same treatment.

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

9

30.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.  Such exposure has occurred in the following instances:

    a)  Throughout his employment, plaintiff saw offensive racially derogatory writings, depictions, and/or graffiti.  Plaintiff is informed and believes that Supervisors Clark, Winston Pierce and Bennie Ellersol, were present and obviously observed the offensive racially derogatory writings, depictions, and/or graffiti, but, to plaintiff's knowledge, they took no steps to remedy the situation.

    b)  Throughout his employment, plaintiff saw offensive racially derogatory writings, depictions, and/or graffiti at bathrooms on both banks and on United States Navy ships.  Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the presence of the offensive racially derogatory writings, depictions, and/or graffiti because the graffiti was offensive, pervasive, and severe, including writings such as "niggers," "monkeys," and drawings depicting lynchings.  Plaintiff has also seen Nazi graffiti, swastikas, references to the KKK, even after the bathroom had recently been painted to cover previous graffiti.  Plaintiff also saw a piece of paper, which was passed among office workers advertising a Klu Klux Klan meeting.

Plaintiff Joe Fairley's Complaint for                                    10
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

31.    Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to such offensive racial epithets, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.  Such exposure has occurred in the following instances:

a)    In or about 1978, plaintiff was terminated for insubordination after touching acting supervisor Pace, who called him a "nigger."  Plaintiff has observed a White supervisor slap another White employee.  Plaintiff is informed and believes and based thereon alleges that White supervisors and White employee were not subject to termination for engaging in physical altercations with White employees.

b)    Throughout most of his employment, plaintiff has heard coworkers telling racist jokes in the presence of various supervisors, including Gary Bailess, C.W. Butler and Buzby.

c)    Throughout most of his employment, plaintiff has heard the word "nigger" or other racial epithets on boats and in fab, aluminum and CSA shops.  Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the use of the language

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

11

because managers, supervisors, employees used racial slurs.

32.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.  Such exposure has occurred in the following instances:

    a) Throughout the first 25 years of his employment, plaintiff observed 20 to 30 nooses in work areas, bathrooms, and lockers.  White employees tied ropes into nooses, which were historically used for lynching in Mississippi, in plain view. Supervisors were present and obviously observed the nooses, but to plaintiff's knowledge took no steps to remedy the situation. Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the presence of these nooses as they were prominently displayed in common areas on numerous occasions.

    b) Throughout his employment, plaintiff has seen drawings depicting lynchings in bathrooms on both banks and on United States Navy ships.

33.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 17 through 29, incorporated as though fully set forth herein.

36.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been and is aware of the fact of presence of offensive racially derogatory

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

12

writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

37.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

38.     The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

39.     NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 30 through 38, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

41.     Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

42.     No plain, adequate, or complete remedy at law is available to plaintiff.  Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS.  Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

43.     Unless restrained by order of this Court, NGSS will continue to pursue policies

Plaintiff Joe Fairley's Complaint for                                                                                    13
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

44.     Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 40 and further alleges for a first claim for relief as follows:

45.     Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

46.     Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 45 and further alleges for a second claim for relief as follows:

47.     Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

48.     Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

49.     Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

Plaintiff Joe Fairley's Complaint for                                                                          14
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

## **PRAYER**

WHEREFORE, plaintiff prays that this Court:

   a)  Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth
       in paragraphs 17 through 39 to be unlawful and in violation of Title VII of the
       Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil
       Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

   b)  Adjudge, decree, and declare that the practices of NGSS complained of herein are
       violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of
       1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as
       amended, 42 U.S.C. § 1981;

   c)  Issue a preliminary and permanent injunction enjoining NGSS, its agents,
       successors, employees, attorneys, and those acting in concert with it from
       engaging in each of the unlawful practices set forth in paragraphs 17 through 39
       and from continuing other practices found to be in violation of applicable law;

   d)  Direct NGSS to take such affirmative steps as are necessary to ensure that the
       effects of its unlawful employment practices are eliminated;

   e)  Enter a permanent mandatory injunction requiring that NGSS adopt employment
       practices in conformity with the requirements of Title VII of the Civil Rights Act
       of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866,
       as amended, 42 U.S.C. § 1981;

   f)  Require that NGSS submit a comprehensive plan detailing how it plans to ensure
       fair and equitable job advancement opportunities for Black employees.  The plan
       should also outline steps to be taken to ensure that jobs available remain open
       until the posting period has expired;

   g)  Require that NGSS institute a policy that affords equal opportunities for training
       and development.  The policy should include the requirement that such training

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

15

opportunities must be announced to the entire workforce as well as a procedure

consisting of a rotation scheme and other procedures to ensure that training for

job advancement is afforded to all those who are interested;

h)  Grant equitable relief, including, but not limited to, back pay, sick pay, vacation

pay, disability benefits, and seniority rights to plaintiff;

i)  Grant such punitive, general, and special damages as proved at trial;

j)  Award plaintiff the costs and litigation expenses of this action and reasonable

attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys

Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k)  Grant such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a

trial by jury.

Dated:  September 29, 2006                SANDRA JARIBU HILL, Esq.
                                                                    Mississippi Workers Center for
                                                                            Human Rights

                                                          WILLIAM C. MCNEILL, III, Esq.
                                                                  The Legal Aid Society-Employment
                                                                          Law Center

                                                          Counsel for Plaintiffs

                                          By:      /s/ William C. McNeill, III
                                                         WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center

Plaintiff Joe Fairley's Complaint for                                                     16
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

600 Harrison Street, Suite 120
San Francisco, California 94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi   38702-1223
(662) 334-1122

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

17

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

    /s/ Laurel Kapros
Laurel Kapros

Plaintiff Joe Fairley's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00786-LG-RHW

18